FARMERS' BANK OF DELAWARE,

*vs.*

VINCENT GILPIN and JOHN F. GILPIN, assignees in
trust, et al.

*New Castle, Sept. T.,* 1833.

The indorser of a promissory note, though fixed in his liability by protest,
is not entitled, as a *creditor*, to a share of the estate of the maker
under an assignment for the benefit of creditors.

Such an indorser is entitled only to be reimbursed payments actually
made by him.

The holder of the note can claim, under the equity of the indorser, out of
the assigned estate, only to the amount of payments so made by the
indorser.

BILL IN EQUITY AGAINST TRUSTEES UNDER AN ASSIGNMENT
FOR THE BENEFIT OF CREDITORS.—Joseph Robinson, being
indebted to sundry persons and unable to pay his debts,
executed an assignment, bearing date August 30th, 1822,
to the defendants, conveying and assigning to them, their
heirs and assigns, all his estate, real and personal, in trust
to convert the same by sale into money, and the proceeds
thereof to apply, in the first place, to the payment of a cer-
tain preferred debt of the assignor, specified in the assign-
ment, and the residue of such proceeds to apply *pro rata,*
towards the payment of all other debts of the assignor due
to such creditors as should within sixty days thereafter
execute a release in full of their respective claims against
the assignor. Among the debts due and unpaid from Joseph
Robinson, the assignor, at the date of the assignment, was
a promissory note for $3000, made by Robinson, Aug. 28th,
1822, and payable to the order of Thomas Bradun, at sixty
days after date. This note was indorsed for Robinson's

52

accommodation, and was discounted by the complainant, the Farmers' Bank of Delaware. The note matured and was duly protested for non-payment. The assignees ac cepted the trust, and the creditors of Joseph Robinson, within the sixty days, executed releases. A release was executed, within the sixty days, by Washington Rice, as the attorney in fact of Thomas Bradun, the indorser, Bradun being then absent and responsible on the note of Robinson, the assignor. No release was executed by the Bank, so as to entitle it as a creditor under the assignment.

After the maturity and protest of the note, the Bank brought an action at law against Bradun, as indorser, and recovered a judgment for $3543.57. Upon this judgment a *fieri facias* was issued, and levied upon lands of Bradun, which lands were afterward sold under other executions, and nothing found applicable to the judgment of the Bank. A *fi. fa. attachment* was also issued, under which Robinson's assignees were summoned as garnishees. They appeared, pleaded *nulla bona,* issue was joined, and finally the Bank, the plaintiff in the attachment, was non-suited. A suit was also brought by the Bank against Joseph Robinson, judgment recovered and execution issued. Under the execution, property of Robinson was sold to the amount of $1865.27.

The present bill is filed by the Bank, setting forth the above facts and claiming that Bradun, as the indorser and surety of Robinson on the note, had an interest in the trust fund entitling him to a dividend thereof, and that the Bank, as the holder of the note, was in equity entitled to stand in the place of Bradun, and to receive his dividend. The prayer was for an account and payment.

The defendants demurred to the bill, and the cause was first heard by the late Chancellor, (Johns, Sr.,) who overruled the demurrer and directed answers.

Thereupon, the assignees in trust, two of the defendants, answered, denying that Bradun was a creditor of Robin-

son, otherwise than as indorser of the note, or that his release by Rice, as attorney, entitled him to any dividend out of Robinson's estate. They also alleged that Bradun had paid no part of the said note. Other defendants, creditors of Robinson, did not answer, and against them decrees were taken *pro confesso.*

The cause was put at issue and came before the present Chancellor, at the September T., 1833, for a final hearing upon the bill, answers and exhibits.

*J. A. Bayard,* for the complainant.

1. Bradun, as an indorser, was so far a creditor as to be entitled under the assignment to prove the debt, although it may be admitted that he must have paid the indorsed note before he could receive a dividend. This was such an equity as the Bank, standing in his place, might enforce; and being itself the creditor, payment of the debt was not a pre-requisite to its receiving a dividend. That the note had not matured before the assignment makes no difference. One holding a debt payable *in futuro,* or even a contingent debt, is none the less a creditor. This assignment in terms extends to all " claims and demands,"—words broad enough to include indorsers; and such was evidently Robinson's intention. Under our insolvent law (*Dig. Del. Laws,* 307,) indorsers are treated as creditors, and in practice they are admitted to prove under assignments. The present case is governed by the practice under our own insolvent laws, and not by decisions upon the bankrupt laws of England.

2. It is argued that we have an adequate remedy at law. Not so, for the object we seek, which is satisfaction out of this fund. It is a trust fund in a court of equity. By what common law process could we reach it? Our only remedy at law, which was by suit against Bradun, has

proved ineffectual, and our equity is to proceed, as in his right, against the fund which is liable to him. To reach the fund we have no remedy at law, but in equity only.

There is no question of diligence on the part of the Bank against Robinson, in order to charge Bradun or to entitle the Bank, in equity, to his rights under the assignment. Bradun, as indorser, was on the note.

*Wales*, for the defendants.

Several objections arise against the equity of the complainant.

1. The complainant claims to stand in the place of Bradun, and to enforce his right to a dividend under the assignment. But Bradun is not a creditor. He is only an accommodation indorser of the assignor's paper, having paid nothing. Mere liability to pay the note does not entitle him to claim. To entitle himself, he must have paid the note. This is according to the settled rule under the English bankrupt law. *Chitty on Bills.* 459–60, 462–3. So also, it is held under the attachment laws of Pennsylvania. *Wallace's Cas.* 115. *Sergeant on Attachment,* 103. Before payment of the note, the Bank, and not Bradun, is the creditor. There cannot be two creditors for the same debt. To admit Bradun's right to a dividend under the assignment, while he stands only as an indorser having paid nothing, might result in leaving the assignor still liable to the Bank in a debt for which Bradun had received a dividend, contrary to equity and to the very purpose of the assignment, which was to obtain a full discharge from the assignor's debts. Bradun's release could not discharge Robinson from his liability to the Bank. It is then clear that Bradun could not himself claim under the assignment; and, therefore, the Bank, in now seeking to enforce his equity, must fail.

2. It is not alleged in the bill that Robinson was unable

to pay, and that all means to recover it from him had been exhausted. Without this, the Bank could have no remedy in equity against an accommodation indorser, and if without remedy against him, it could have no equity under him.

3. The Bank had an adequate remedy at law, by action against Bradun, which they have already elected to pursue by a suit prosecuted to judgment and an attachment at law against these assignees. They elected this in preference to their remedy under the assignment, if such they had ; and on this ground they have now no equity.

JOHNS, JR.,CHANCELLOR.—The determination of this case must depend on the relation which Bradun as an indorser, liable absolutely to pay, sustained to Joseph Robinson, the maker. The term *creditor* has, by numerous decisions in cases of bankruptcy, acquired a legal meaning; and, in all cases of that description, its proper import is well understood. In ascertaining who are entitled as creditors to prove under the commission in bankruptcy the rights of an indorser, absolutely liable, have invariably been held to depend on the fact of payment, unless he has taken some legal evidence of debt, for which the liability of the surety is a good consideration. The fact of payment is declared to be essential, as well in a court of equity as at law. The difference in the practice of the respective courts is as to the time when it should be made,—the former requiring it to be prior to the act of bankruptcy, the latter considering the precedent liability accompanied by subsequent payment sufficient to entitle the indorser or surety to prove.

If the claim presented by the complainants in this suit comes within the principles settled by the decisions in cases of bankruptcy, there can be no ground on which it can be sustained ; for even when the surety has taken from his principal some legal evidence of debt to secure himself, he shall not be permitted to receive a dividend on such

proof, until he shall have discharged the debt which he is under obligation to pay ; nor shall his dividend amount to more than his actual payment, though his counter security may entitle him to prove a much greater amount. *Ex parte Wildman*, 1 *Atk.* 110 : 2 *Ves. Sr.* 113. *S. C.: Ex parte Marshall*, 1 *Atk.* 129 ; *Howis vs. Wiggins*, 4 *T. R.* 714.

But, independently of the decisions referred to in cases of bankruptcy, what are the liabilities and rights of an indorser, when the note discounted is for the accommodation of the maker, and the indorser simply lends his name, and thereby becomes conditionally responsible to the holder of the note ? By the act of indorsement he enables the maker to obtain credit with the holder, who advances the money, and he incurs a qualified liability. It is not until the maker fails to make payment, and he receives notice under the protest, that his liability becomes absolute; nor even then, although fixed, can he sustain a claim aganist the maker, of such a nature as would authorize him to institute an action at law against him. Does the proceeding on the part of the holder of the note to enforce payment by pursuing his legal remedy vary the liability of the indorser ? When judgment is obtained, it is but a security of a higher nature, and does not discharge the debt of the principal; and if there be execution against the property and nothing obtained under it, so long as the holder of the note fails to obtain payment out of the property or from the indorser, he retains the right of property in the note, and the indebtedness of the maker to the holder remains undiminished and absolute. The only right the indorser can have is purely conditional, as against the maker. If, as set forth in the bill, his being a security or absolutely liable render him a *creditor*, then clearly it must follow he has a legal claim upon the maker, and such claim cannot exist without a legal remedy ; but until the indorser pays and takes up the note he cannot maintain *assumpsit* against the maker,—which is an equitable action,

and is founded on the implied promise which the law raises in his favor.

This question may be considered in another view, as against the estate of a deceased person. Under the circumstances of this case, could the indorser claim and make probate of such a demand as a debt? It does appear to me impossible; for it cannot be contended that a mere liability to pay as surety entitles the party so liable to a credit for a debt. And, clearly, the relation of creditor presupposes that of debtor. The terms are cor-relative. My opinion in relation to this case is in accordance with that delivered by Washington, J., in the case of *Taylor vs. Gardiner, garnishee of Lees, Sergeant on Attachment,* 103. In that case there was a *scire facias* against the garnishee, upon an attachment and judgment against Lees. The question of law arose upon the following facts, viz: The attachment was laid on the 14th of September, 1807. In answer to the interrogatories put to the defendant, under the Act of Assembly, he stated that on the 19th of September, 1807, he received fifty crates of earthen ware belonging to Lees, which netted upwards of $900, but that Lees was under acceptances of certain bills indorsed by the defendant, which the defendant had been obliged to pay, the bills having been protested for non-payment. These bills were protested in August, and were taken up and paid by the defendant in October and November, 1807. Washington, J., in charging the jury, said,—" this is a hard case upon the defendant, who, " at the time this attachment was levied, was liable to pay " these bills as indorser, to a much greater amount than " the value of the funds of Lees in his hands : and if he had "then paid them, he would not have had in his hands any " effects of Lees. But until he paid them he was not a " creditor of Lees ; and, of course, the attachment bound "the effects of Lees in his hands at the time it was laid,— " which could not be diminished by subsequent credits to " which he might be entitled. Now, until these bills were

"paid by the defendant, he had *no claim* against Lees, and " on the 19th of September, he had goods of Lees in his "hands,—which must decide the issue in favor of the " plaintiff."

As the complainants have come into this Court to obtain relief by substitution, and have founded their claim to a dividend under the assignment, upon the right of Thomas Bradun, as a creditor of Joseph Robinson ; and as I am of opinion that Bradun, as an indorser, fixed and absolutely liable, cannot, until payment, have any claim, or be considered as *a creditor* of Joseph Robinson,—therefore, in every view which I have been able to take of this case, the complainant must fail. As the bill has been taken *pro confesso* against some of the defendants, who are jointly interested in this trust fund, and those who have appeared and answered have disproved the complainant's case, the bill must be dismissed as to all the defendants, with costs. *Vide. Classon vs. Morris, on Appeal.* 10 *Johns' Rep.* 524.

This decree was affirmed by the Court of Errors and Appeals, at the June Term, 1835. See 1 *Harring. Rep.* 561.